UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GABRIEL JESUS MORAN CIFUENTES,

            Petitioner,

v.

KEVIN RAYCRAFT et al.,

            Respondents.

_____/

Case No. 1:26-cv-1172

Honorable Robert J. Jonker

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### BACKGROUND

Petitioner is a native and citizen of Colombia. (Pet., ECF No. 1, PageID.10; Notice to Appear (NTA), ECF No. 4-2, PageID.53.) On May 9, 2024, Petitioner entered the United States at the Brownsville, Texas, Port of Entry. (Pet., ECF No. 1, PageID.10; NTA, ECF No. 4-2, PageID.53.) At that time, Department of Homeland Security (DHS) agents arrested and detained Petitioner and issued him a Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (NTA, ECF No. 4-2, PageID.56.) Petitioner was then "paroled into the United States" under 8 U.S.C. § 1182(d)(5)(A). (Pet., ECF No. 1, PageID.12; 2024 Form

I-213, ECF No. 4-3, PageID.58; Most Recent I-94, ECF No. 4-4, PageID.59 (indicating that Petitioner's "Class of Admission" is "DT").) In April of 2025, DHS "issued a blanket termination of parole."[1] *See Rodriguez Martinez v. Raycraft*, No. 1:25-cv-1504, 2025 WL 3511093, at *2 (W.D. Mich. Dec. 8, 2025) (citation omitted); (*see* Most Recent I-94, ECF No. 4-4, PageID.59.)

On October 24, 2025, Petitioner was arrested and detained by ICE in Detroit. (2025 Form I-213, ECF No. 4-5, PageID.62; Pet., ECF No. 1, PageID.13.) On January 27, 2026, Petitioner requested a bond hearing, but he has not received a bond hearing. (Pet., ECF No. 14–15.) On January 29, 2026, Petitioner and his counsel appeared before the Detroit Immigration Court and were ordered to pay the filing fee for Petitioner's asylum application by February 19, 2026, or the asylum application would be deemed abandoned. (Order of the Immigration Judge (IJ), ECF No. 4-6, PageID.64.) On February 24, 2026, the IJ issued an order finding that Petitioner's asylum application "is deemed waived and/or abandoned" because Petitioner's counsel did not pay the filing fee by February 19, 2026. (*Id*.) On May 11, 2026, an Immigration Judge ordered Petitioner removed to Columbia. (ECF No. 10-1, PageID.27). Petitioner has until June 11, 2026, to appeal that decision. (*Id*.). According to Petitioner, he "intends to timely appeal."[2] (ECF No. 11, PageID.32).

In Petitioner's § 2241 petition, originally filed in the United States District Court for the Eastern District of Michigan, Petitioner challenges the lawfulness of his current detention and asks

---

[1] Respondents argue that this blanket termination ended Petitioner's parole. (ECF No. 10, PageID.22-23). But, as this Court has concluded multiple times before, that blanket termination did not properly revoke Petitioner's parole. *See, e.g.*, *Jimenez v. Raycraft*, No. 1:26-cv-1130, ECF No. 6, PageID.60 (W.D. Mich. May 6, 2026); *Ojeda v. Raycraft*, No. 1:26-cv-716, ECF No. 6 (W.D. Mich. April 17, 2026). So the Most Recent Form I-94 that Respondents submitted does not establish that the original termination date of Petitioner's parole was April 19, 2025.

[2] Because the appeal period on the IJ's removal order has not yet expired, Petitioner removal order is not yet "administratively final" such that his detention fall under Section 1231(a) rather than Section 1226(a). *See Mujica-Pena v. Raycraft*, No. 1:26-CV-684, 2026 WL 928860, at *1 n.2 (W.D. Mich. Apr. 6, 2026).

the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondents to release Petitioner or ordering Respondents to conduct a bond hearing to satisfy the requirements of due process. (Pet., ECF No. 1, PageID.22.). Respondents filed their response to Petitioner's § 2241 petition on April 8, 2026. (ECF No. 4.) On April 9, 2026, this matter was transferred to this Court for further proceedings. (ECF No. 5.) Petitioner filed his reply on April 13, 2026, (ECF No. 8.).

On May 5, 2026, the Court ordered the parties to submit supplemental briefing to address a legal question regarding the status of petitioner's parole. (ECF No. 9). Respondents filed a response on May 18, 2026. (ECF No. 10). Petitioner filed his response the next day. (ECF No. 11). But because some uncertainties remain regarding the status of Petitioner's parole,[3] the Court will apply the same §§ 1225 and 1226 analysis that it has applied in hundreds of recent immigration detention proceedings. *See Mujica-Pena v. Raycraft*, No. 1:26-cv-684, ECF No. 10, PageID.149 (W.D. Mich. April 6, 2026).

### HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

---

[3] Neither party adequately addressed the Court's concerns regarding the status of Petitioner's parole. The Court asked the parties to clarify whether the immigration judge's conclusion that Petitioner "abandoned" his asylum application distinguishes this case from other parole revocation cases in this district resulting in a grant of immediate release. Each parties' supplemental briefing is largely unresponsive to that question. Respondents argue Petitioner's abandonment "demonstrates that any purpose of parole has been accomplished," such that petitioner's parole has expired. (ECF No. 10, PageID.25). But they do not explain how they reached that conclusion and, instead, focus on other issues. Likewise, Petitioner only briefly discussed the immigration's "abandonment" finding; he fails to address its implications. Because the parties briefing does not clarify the uncertainties noted by the Court, the Court finds that granting a bond hearing under the normal Section 1225 and Section 1226 analysis, rather than granting immediate release, is the most prudent approach here. *Cf. Aray Lattinez v. Mullin*, No. 1:26-cv-1072, ECF No. 6, PageID.2 n.1 (W.D. Mich. April 20, 2026) (declining to grant immediate release where Petitioner's parole expired by its terms after he was detained by ICE).

Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## I.      Merits Discussion

### A.      Statutory Basis for Petitioner's Detention

Based on the facts presented by the parties and the reasoning of the Sixth Circuit Court of Appeals in *Lopez-Campos v. Raycraft*, Nos. 25-1965, 1969, 1978, 1982, 2026 WL 1283891 (6th Cir. May 11, 2026), the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.[4]

### B.      Fifth Amendment Due Process Considerations

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Lopez-Campos*, the Sixth Circuit Court of Appeals explained:

> Noncitizens who have "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903). Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993*); see also Demore v. Kim*, 538 U.S. 510, 523 (2003). Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the

---

[4] Additionally, for the same reasons set forth in *Hernandez Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076 (W.D. Mich. Jan. 6, 2026), the Court disagrees with Respondents' argument that Petitioner's detention is governed by § 1225 due to his manner of entry into the United States.

4

country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." *Yamataya*, 189 U.S. at 100–01.

*Lopez-Campos*, 2026 WL 1283891, at *11. The Sixth Circuit therefore upheld the lower courts' determinations the government's detention of the *Lopez-Campos* petitioners "without bond under § 1226(a) was a deprivation of liberty that violated [their] due process rights." *Id.* at *13.

Petitioner is likewise detained under § 1226(a) and has been denied an individualized bond hearing. Therefore, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights. *See id.*; *see also Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

## II.    Other Claims and Other Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## III.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: Antele Cobix v. Raycraft, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); Candela Bastidas v. Noem, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); Acuna Sanchez v. Noem, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10

(W.D. Mich. Dec. 12, 2025); Penagos Robles v. U.S. Dep't of Homeland Sec., No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the ICE Detroit Field Office Director and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the Warden of the North Lake Processing Center and the United States Attorney General as Respondents.

**Conclusion**

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative, immediately release Petitioner from custody.[5] The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if

---

[5] This Court has adopted a standard practice of requiring such a hearing within five business days, even if the Petitioner requests a deadline that is shorter or longer or only release.

6

and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the

conditions of the bond, or if bond was denied, the reasons for the denial.


Dated:    May 21, 2026                    /s/ Robert J. Jonker
                                                      Robert J. Jonker
                                                      United States District Judge